**Milton HERZBERG and Juliette Herzberg, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. TH 58-C-48.**

United States District Court
S. D. Indiana,
Indianapolis Division.

June 19, 1959.

Gambill, Cox, Zwerner, Gambill, by Benjamin G. Cox and James E. Sullivan, Terre Haute, Ind., for plaintiffs.

Don A. Tabbert, U. S. Atty., and John C. Vandivier, Jr., Asst. U. S. Atty., Indianapolis, Ind., for defendant.

HOLDER, District Judge.

The plaintiffs' action seeks to recover $10,529.25, plus interest, as an alleged overpayment of their income taxes for the years 1952 through 1954.

The facts were found by the Court as follows:

Prior to the death of Dr. Norman Rosenfeld, a licensed M. D., he conducted a general practice of medicine at a rented office location on an oral month to month lease at 222 Elm Street, Clinton, Indiana. Included in his valuable established practice of medicine were a large number of patients whose treatments consisted of regular weekly shots, heat treatments, diathermy, etc., which were handled by his office registered nurse, one Bertha Boatman. The decedent's will was duly probated in the Vermillion Cir-

cuit Court of Indiana and the executor thereof duly qualified. The decedent left surviving minor children for whom a guardian was appointed and duly qualified pursuant to the will. The executor immediately sought to dispose of decedent's valuable established practice as an asset of the estate. She communicated with the American Medical Association to this effect. The plaintiff, Milton Herzberg, and his wife were strangers, both in blood and in fact, to decedent and the executor. Dr. Milton Herzberg was a licensed practicing M. D. in Chicago, State of Illinois, and learned of the availability of the decedent's practice through an aunt of decedent. The executor offered to sell the practice to Dr. Herzberg for a cash price which was declined. The executor and the guardian then entered into a written contract with Dr. Herzberg on November 5, 1952, which reads as follows:

"Profit-Sharing Agreement

"Whereas, Norman B. Rosenfeld, deceased, late of Vermillion County, Indiana, had prior to his death, engated in the general practice of medicine in Clinton, Indiana, where he maintained an office at 222 Elm St., and

"Whereas, said decedent had equipped said office with an air-conditioner, furniture, fixtures, and other equipment of an appraised value of $1557.50 and had maintained a stock of drugs and supplies of an appraised value, at the time of his death, of $2902.55, and had established patient lists of considerable number and intangible value, and

"Whereas, Milton Herzberg, a license physician of the State of Illinois and applicant for license by the State of Indiana, desires to assume the practice of said Norman B. Rosenfeld, upon the granting of license to practice in Indiana, and recognizes the value of said practice,

"Now, Therefore, this agreement as to the distribution of income and profit from the continuation of said practice is now made by and between Derexa Wisehart, Executrix under the will of Norman B. Rosenfeld, and Pearl Cohn, guardian of the minor children (sole beneficiaries) of said Norman B. Rosenfeld, hereinafter referred to collectively as First Party, and Milton Herzberg, hereinafter referred to as Second Party. In Consideration of the mutual covenants, promises and agreements, hereinafter contained, said parties do now contract and agree as follows:

"1. The term of this venture shall commence on the 1st day of November, 1952 and end on the 31 day of October, 1954. The fiscal year shall commence on the 1 day of November and end on the 31 day of October next succeeding.

"2. Second Party shall procure a license to practice medicine in the State of Indiana, and during the term hereof shall engage in the general practice of medicine in the State of Indiana, and for the present, shall maintain the office heretofore occupied by Dr. Norman B. Rosenfeld at Clinton, Indiana. The location of such office may be changed from time to time by mutual consent of the Parties, or by the necessity of circumstance.

"3. First Party shall contribute to the use of the venture, the office air conditioner, other furniture and fixtures and office equipment, patient lists and records, all of which shall be kept intact and returned to First Party, at the expiration of the term of this venture, excepting only patient lists and records, which shall be retained by Second Party upon fulfillment of his obligations hereunder. First Party shall also contribute to this venture, drugs and medical supplies, now in stock at their appraised value of $2902.55, which drugs and supplies shall con-

stitute an opening expendable inventory, and which shall be inventoried at the close of fiscal year at cost or market, whichever is lower, in determining profit. Upon the expiration of this venture, the inventory of drugs and supplies then on hand, at cost or market, whichever is lower, shall be determined, and First Party shall be entitled to be reimbursed in cash, the sum of $2902.-55 as the contribution of original capital by First Party. Any equipment, instruments, furniture or fixtures, the use of which is made available by Second Party shall be returned to Second Party at the expiration of the term of this venture.

"4. Second Party shall devote his entire working time to the practice of medicine hereunder, and the gross receipts of Second Party during the term hereof, received by him as professional fees or other compensation for personal services or treatment, and from the sale, dispensing or prescribing of drugs, medicines or medicinal supplies, shall constitute gross income of this venture. Regular books of account shall be kept on a cash basis provided however, that the inventory of drugs and supplies on hand shall be taken into consideration in computing profit. At the close of each fiscal year during the two year term hereof, the net profit of the venture shall be determined according to the methods and principles used in determining ordinary net income of a partnership under the Internal Revenue Code. Such net profit shall be paid and distributed to the parties hereto in the following percentage shares:

| | |
|---|---|
| Second Party | 60% |
| First Party | 40% |

Provided However, that if this arrangement should prove inequitable, and should impose an undue burden and economic hardship on Second Party, then in such event these percentages shall be subject to renegotiation on an equitable basis and if no satisfactory agreement is reached, such division of profit shall be submitted to the Circuit Court of Vermillion County, and its decision thereon shall be final.

"5. Second Party shall have sole charge of the venture, without interference in his policies or practice by First Party, and shall have the right in his sole discretion to conduct his practice of medicine as he sees fit, and during the term hereof, so long as Second Party fulfills his obligations hereunder, First Party shall not, in any way, exercise any control of the management of the venture of the methods of practice adopted by Second Party, or the fees fixed by Second Party for his services or supplies.

"6. First Party shall not be responsible, in any way, for the policies or practices adopted by Second Party, and First Party shall not be liable for any loss whatsoever arising out of the venture, in excess of the stock of drugs and supplies contributed by First Party as above recited. Second Party undertakes and agrees that in no event shall First Party's share of profit be less than the total sum of the appraised value of the air conditioner, furniture, fixtures, equipment, drugs and supplies, amounting to $4,460.05.

"7. In the event that debts, claims or other just charges against the estate of Norman B. Rosenfeld, deceased, exceed the other funds and personal property in the hands of the Executrix, available for the satisfaction thereof, Pearl Cohn shall, and does hereby covenant, to reimburse said Executrix to the extent of the fair market value of the personal property of the estate of Norman Rosenfeld hereby made available to this venture, or, if the court orders such property sold at public sale, to purchase same, subject to approval of court, at such sale, and make it

available to this venture under the terms hereof.

"8. Second Party shall be entitled, from time to time to withdraw funds against his share of the profits of the venture, and shall distribute to First Party, monthly, such amount as may be accurately estimated from the books of account, to be First Party's share of the profit hereunder. Such amounts shall be paid to Derexa Wisehart, Executrix under the will of Norman B. Rosenfeld, during the period of administration of the estate, or until contrary order of the Circuit Court of Vermillion County, Indiana; upon contrary order of court or upon final settlement of the estate of Norman B. Rosenfeld, whichever shall first occur, sums payable to First Party hereunder shall be paid to Pearl Cohn, guardian of the minor children of Norman B. Rosenfeld, or to her duly accredited representative.

"9. Upon the close of each fiscal year Second Party shall, within thirty days following, prepare an information return for Federal Income taxes, showing that net income of the venture and the distributive share of each Party hereunder, and shall furnish a copy thereof to First Party. First party or its accredited representative may inspect the books and records of the venture at all reasonable times.

"10. Second Party shall, as an expense of the venture, procure and pay premiums upon malpractice insurance, and on the premises liability insurance, indemnifying himself and First Party against loss occasioned by such liability, and shall procure insurance covering the loss of drugs, supplies, equipment, furniture, fixtures and other tangible personal property, by fire or other casualty.

"11. At the expiration of the term of this venture, and the adjustment of accounts as between the parties hereto, First Party shall have no further interest whatsoever in the office space leasehold, in the patient lists or records, and shall not be entitled thereafter to any share of or participation in net profit, all of which, shall at such time, become the sole property of Second Party.

"In Witness Whereof said Parties have hereunto set their hands and seals this 5th day of November, 1952.

"/s/ Derexa Wisehart (Seal)
"Derexa Wisehart, Executrix under the will of Norman B. Rosenfeld

"/s/ Pearl Cohn (Seal)
"Pearl Cohn, Guardian of James Rosenfeld and Lorraine Rosenfeld

First Party

"/s/ Milton Herzberg (Seal) Second Party"

---

The executor paid 5% of the estate's share of the profits from the contract to the nurse Boatman to induce her to remain with Dr. Herzberg. Dr. Herzberg was duly licensed to practice medicine in Indiana following the execution of the contract. The contract was approved by the Vermillion Circuit Court of Indiana in the decedent's estate. Dr. Herzberg took over the practice of Dr. Rosenfeld pursuant to the contract and paid the office rent beginning November 10, 1952 and continuously since. There was no checking account in the contracting par-

ties' names. The checking account was in the sole name of Dr. Herzberg. Dr. Herzberg during the term of the contract and pursuant to the contract conducted said practice of medicine. Between November 1, 1952 and October 31, 1953, a net profit of $26,182.04 was earned in said practice of which 40% was paid to the executor and only the remaining 60%, or $15,709.22 was reported by Dr. Herzberg in his return to the defendant. Between November 1, 1953 and October 31, 1954, a net profit of $33,264.97 was earned in said practice of which 40% was paid to the guardian and only the remaining 60%, or $19,958.98 was reported by Dr. Herzberg in his return to the defendant. For the first fiscal year ended October 31, 1953, the decedent's estate filed a Form 1041, United States Fiduciary Income Tax Return, with defendant and reported the 40% share from the contract with Dr. Herzberg. A deduction was claimed for the 5% of its 40% share of the contract paid to Bertha Boatman. For the second year of the contract neither the guardian, nor the estate, reported the 40% share of the contract for Federal Income Tax purposes. During the second and last fiscal year of the contract, the estate was closed and the guardianship was transferred to the State of Missouri. Upon examination by the United States Internal Revenue Service, it was determined that Dr. Herzberg was liable for taxes on the entire 100% of the net income received from the medical practice during each of the years 1952, 1953 and 1954 before the payment of the 40% to the estate and/or the guardianship. Accordingly, deficiencies were assessed thereon against Dr. Herzberg which were paid on March 15, 1957, in the sum of $615.23 for the year 1952; $5,732.47 for the year 1953; and $4,251.55 for the year 1954. The plaintiffs duly filed claims for refund for said payments of March 15, 1957. The claims were formally disallowed under date of May 8, 1958, and this action was timely filed on September 8, 1958.

The jurisdictional facts were admitted and stipulated by the parties.

The plaintiffs claim the contract is a joint venture which term is included within the definition of "partnership" in Section 3797 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3797, and Section 7701 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7701.

The defendant claims the contract, viewed fairly and reasonably, with substantive effects in mind, was only a purchase and sale agreement and there was no partnership.

The Court concludes that the contract did not constitute a joint venture within the meaning of the statute. The contract was a method of purchasing and selling the practice of Dr. Rosenfeld which, in accordance with paragraph 11 and all of the contract, became the sole property of Dr. Herzberg for no other consideration but the 40% of the net profits of the medical practice with some undesignated portion of the 40% as payment for the other contributions, such as office furniture etc., of the executor and guardian as set forth in the contract for the two years. The 40% share of the profits received by the estate and guardianship were capital expenditures incurred and paid by Dr. Herzberg and are taxable to him in full under the United States Internal Revenue Act in force during the years in question.

It follows that the plaintiffs have not overpaid their income taxes and the action of the defendant in disallowing plaintiffs' claim for refund was proper.

Findings of fact, conclusions of law, and a judgment entry have heretofore been filed.